Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*


UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID RODENBACH, <br><br> Plaintiff, <br><br> vs. <br><br> SHARPS COMPLIANCE CORP., SHARON R. GABRIELSON, GARY R. ENZOR, PARRIS H. HOLMES, W. PATRICK MULLOY, and SUSAN N. VOGT, <br><br> Defendants. | Case No.: <br><br> **Complaint For:** <br><br> (1) Violation of § 14 (e) of the Securities Exchange Act of 1934 <br> (2) Violation of § 14 (d) of the Securities Exchange Act of 1934 <br> (3) Violation of § 20(a) of the Securities Exchange Act of 1934 <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, David Rodenbach ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.       Plaintiff brings this stockholder action against Sharps Compliance Corp. ("Sharps or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14 (d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a

result of Defendants' efforts to sell the Company to Raven Buyer, Inc. ("Purchaser") via merger subsidiary Raven Houston Merger Sub, Inc. ("Merger Sub"), affiliates of Aurora Capital Partners ("Parent" or collectively with Purchaser and Merger Sub, "Aurora") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a July 12, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Aurora will acquire all the outstanding shares of Sharps common stock for $8.75 per share in cash. As a result, Sharps will become an indirect wholly-owned subsidiary of Aurora.

3.      Thereafter, on July 25, 2022, Sharps filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Recommendation Statement describes an insufficient process with only one goal in mind – to sell the Company to Aurora. The Recommendation Statement describes an abbreviated process in which no market check was conducted and in which no significant consideration was given to potential strategic alternatives.

5.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and

executive officers will be able to exchange all Company equity awards for the merger consideration.

6.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Sharps shares in favor of the Proposed Transaction.  The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Sharps, provided by Sharps to the Company's financial advisor Raymond James & Associates, Inc. ("Raymond James"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Raymond James and provided to the Company and the Board.

7.      Accordingly, this action seeks to enjoin the Proposed Transaction.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

9.      Plaintiff is a citizen of Washington and, at all times relevant hereto, has been a Sharps stockholder.

10.      Defendant Sharps provides medical, pharmaceutical, and hazardous waste management services in the United States. Sharps is incorporated in Delaware and has its principal

place of business at 9220 Kirby Drive, Suite 500, Houston, Texas 77054.  Shares of Sharps common stock are traded on the Nasdaq Stock Exchange under the symbol "SMED".

11.    Defendant Sharon R. Gabrielson ("Gabrielson") has been a Director of the Company at all relevant times.

12.    Defendant Gary R. Enzor ("Enzor") has been a director of the Company at all relevant times.

13.    Defendant Parris H. Holmes ("Holmes") has been a director of the Company at all relevant times.

14.    Defendant W. Patrick Mulloy ("Mulloy") has been a director of the Company at all relevant times.  In addition, Mulloy serves as the Company's Chief Executive Officer ("CEO") and President.

15.    Defendant Susan N. Vogt ("Vogt") has been a director of the Company at all relevant times.  In addition, Vogt serves as the Company's Chairman of the Board.

16.    Defendants identified in ¶¶ 11 - 15 are collectively referred to as the "Individual Defendants."

17.    Non-Party Aurora is a leading Los Angeles-based private equity firm with over $4.5 billion in assets under management

18.    Non-Party Merger Sub, Inc. is a wholly owned subsidiary of Aurora created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14 (d), and 20(a) of the Exchange Act.  This action is not a collusive

one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

22.     Sharps Compliance Corp. provides medical, pharmaceutical, and hazardous waste management services in the United States. It offers Sharps Recovery System for the containment, transportation, treatment, and tracking of medical waste generated outside the hospital and health care facility settings; TakeAway Recovery System to treat used needles, syringes, and other used healthcare products; Route-Based Pickup Service, a medical and hazardous waste pick-up services; and MedSafe, a solution for the safe collection, transportation, and disposal of unwanted and expired ultimate-user medications. The company also provides TakeAway Medication Recovery System that facilitates the proper disposal of unused medications; Black Pail Program for Rx, a solution with minimal segregation for the disposal of various pharmaceuticals; Inhaler

Disposal to collect, transport, and destroy used pharmaceutical inhalers; Hazardous Drug Spill Control Kit for the cleanup of chemotherapy and other HD spills; TakeAway Recycle System for the collection and recycling of single-use medical devices from surgical centers and other healthcare facilities; ComplianceTRAC, a Web-based compliance and training program; and Universal Waste Shipback Systems to collect, transport, and recycle light bulbs, batteries, and other mercury containing devices. In addition, it offers other solutions, such as TakeAway Environmental Return System, SharpsTracer, Sharps Secure, Needle Disposal System, Complete Needle Collection and Disposal System, Pitch-It IV Poles, Asset Return System, and Spill Kit Recovery System, as well as Sharps MWMS, a medical waste management system. The company serves customers in home health care, retail clinics and immunizing pharmacies, pharmaceutical manufacturers, professional offices, assisted living and long-term care facilities, and government agencies, as well as distributors. Sharps Compliance Corp. was founded in 1992 and is headquartered in Houston, Texas.

23.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the May 11, 2022 press release announcing its 2022 Q3 financial results, the Company reported milestones such as Route-based customer locations increased 21% to 18,600 from 15,400 as well as an increase in billings of 12%.

24.     Speaking on the results, CEO Defendant Vrabely said, "Our third quarter results are largely in line with our expectations and reflect a return to more normalized market conditions following unusually strong performance in the March quarter of fiscal 2021, which benefitted significantly from COVID-19 immunization activity."

25.     The promise and financial results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Sharps.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

26.     Despite this upward trajectory, the Individual Defendants have caused Sharps to enter into the Proposed Transaction without providing requisite information to Sharps stockholders such as Plaintiff.

***The Flawed Sales Process***

27.     The Recommendation is materially deficient. The Recommendation Sheet fails to disclose whether a committee of disinterested directors was appointed to run the sale process, and if so, the specific powers that committee had in evaluating a potential transaction.

28.     To compound this issue, the sales process was conducted in a rushed manner in which no market check for potentially interested third parties was conducted, and minimal consideration for strategic alternatives was given. Company insiders coordinated an abbreviated process whereby speed of completion of the deal was a stated reason for the merger and the interests of common shareholders were minimized.

29.     In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Aurora, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way.  The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including Aurora, throughout the sales process, if any, would fall away.

30.    It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

**The Proposed Transaction**

31.    On July 12, 2022, Sharps issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **HOUSTON, July 12, 2022 (GLOBE NEWSWIRE) --** Sharps Compliance Corp. (NASDAQ: SMED) ("Sharps" or the "Company"), a leading full-service national provider of comprehensive waste management solutions including medical, pharmaceutical and hazardous waste, today announced that it has entered into a definitive merger agreement to be acquired by an affiliate of Aurora Capital Partners ("Aurora"), a leading middle-market private equity firm.
>
> Under the terms of the merger agreement, Aurora will commence an all-cash tender offer to acquire all of the issued and outstanding shares of Sharps for $8.75 per share, which represents a premium of approximately 207% over Sharps' closing share price on July 11, 2022. The transaction has been unanimously approved by the Board of Directors of Sharps.
>
> Following the successful completion of the tender offer, Aurora will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price.
>
> Pat Mulloy, President and Chief Executive Officer of Sharps, stated, "Sharps is a leading provider of comprehensive solutions for the small to medium generators of medical, hazardous and pharmaceutical waste. To date, the Company has developed a tremendous customer base by offering route-based and mailback medical waste disposal services and we believe there is significant runway for increasing the market penetration for our MedSafe solution for the safe and compliant disposal of unused medications including controlled substances. In addition to delivering immediate value to our shareholders, this transaction provides Sharps with a long-term partner that is focused on building upon our strong platform."
>
> In connection with the entry into the merger agreement, certain directors and executive officers of Sharps have entered into tender and support agreements with Aurora pursuant to which they have, among other things, agreed to tender in the offer all of their shares.
>
> The transaction is subject to clearance under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and other customary closing conditions. The transaction is not subject to any financing contingency and is expected to close in

the third calendar quarter of 2022. Upon the completion of the transaction, Sharps will become a privately held company and shares of Sharps common stock will no longer be listed on any public market.

Raymond James & Associates, Inc. acted as financial advisor and Norton Rose Fulbright US LLP acted as legal advisor to Sharps.

About Sharps Compliance Corp.

Headquartered in Houston, Texas, Sharps Compliance (NASDAQ: SMED) is a leading business-to-business services provider to the healthcare, long-term care and retail pharmacy markets. Sharps Compliance offers comprehensive solutions for the management of regulated medical waste, hazardous waste and unused medications. For more information, visit: www.sharpsinc.com.

**About Aurora Capital Partners**

Aurora Capital Partners is a leading private equity firm focused principally on control investments in middle-market companies with leading market positions, stable industry dynamics, attractive business model characteristics and actionable opportunities for growth in partnership with management. Aurora provides unique resources to its portfolio companies through its Strategy & Operations Program and its team of experienced operating advisors. Aurora's investors include leading public and corporate pension funds, endowments and foundations active in private equity investing. For more information about Aurora Capital Partners, visit: www.auroracap.com.

*Potential Conflicts of Interest*

32.     The breakdown of the benefits of the deal indicates that Sharps insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Sharps.

33.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably,

the Recommendation Statement fails to provide an accounting of the merger consideration which such shares will be exchanged for as follows:

| Name | Number of Shares | Cash Consideration Payable for Shares ($) |
|---|---|---|
| **Non-Employee Directors** | | |
| Sharon R. Gabrielson | 69,747 | $610,286 |
| Gary R. Enzor | 10,353 | $90,589 |
| Parris H. Holmes | 639,996 | $5,599,965 |
| Susan N. Vogt | 39,832 | $348,530 |
| **Executive Officers** | | |
| W. Patrick Mulloy | 16,997 | $148,724 |
| Eric T. Bauer | — | — |
| Diana P. Diaz | 12,627 | $110,486 |
| Gregory C. Davis | 2,394 | $20,948 |
| Dennis P. Halligan | 2,053 | $17,964 |

34.     Notably, Company insiders, currently own large, illiquid portions of Company stock, stock option, restricted share, or other equity awards, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Name of Executive Officer or Director | Number of Shares Subject to Vested Company Stock Options | Cash Consideration for Vested Company Stock Options ($) | Number of Shares Subject to Unvested Company Stock Options | Cash Consideration for Unvested Company Stock Options ($) | Total Cash Consideration for Company Stock Options in the Merger ($)[1][2] |
|---|---|---|---|---|---|
| W. Patrick Mulloy | 1,250 | $3,763 | 18,750 | $56,437 | $60,200 |
| Eric T. Bauer | — | — | 200,000 | $504,000 | $504,000 |
| Diana P. Diaz | 31,250 | $148,438 | 76,200 | $123,750 | $272,188 |
| Gregory C. Davis | 11,250 | $54,063 | 31,850 | $34,312 | $88,375 |
| Dennis P. Halligan | 21,268 | $109,061 | 31,850 | $34,313 | $143,374 |

| Name of Executive Officer or Non-Employee Director | Number of Unvested Company Restricted Stock Awards[1] | Cash Consideration for Unvested Company Restricted Stock Awards ($) | Total Cash Consideration for Company Restricted Stock Awards in the Merger ($) |
|---|---|---|---|
| *Non-Employee Directors* | | | |
| Sharon R. Gabrielson | 4,849 | $42,429 | $42,429 |
| Gary R. Enzor | 3,451 | $30,196 | $30,196 |
| Parris H. Holmes | 3,233 | $28,289 | $28,289 |
| Susan N. Vogt | 3,233 | $28,289 | $28,289 |
| | | | |
| *Executive Officers* | | | |
| W. Patrick Mulloy | 21,983 | $192,351 | $192,351 |
| Eric T. Bauer | 5,740 | $50,225 | $50,225 |
| Diana P. Diaz | 12,156 | $106,365 | $106,365 |
| Gregory C. Davis | 7,184 | $62,860 | $62,860 |
| Dennis P. Halligan | 6,159 | $53,891 | $53,891 |

| Name of Executive Officer | Number of Unvested Company Restricted Stock Awards[1] | Cash Consideration for Unvested Company Restricted Stock Awards |
|---|---|---|
| Eric T. Bauer | 11,131 | $97,396 |
| Diana P. Diaz | 31,429 | $275,004 |
| Gregory C. Davis | 16,714 | $146,248 |
| Dennis P. Halligan | 14,331 | $125,396 |
| Other Employees | 26,112 | $228,480 |
| **Total** | **99,717** | **$872,524** |

35.     In addition, certain employment agreements with certain Sharps executives, entitle such executives to severance packages should their employment be terminated under certain

circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follow:

| Name | Cash ($) | Equity ($) | Perquisites/ Benefits ($) | Other ($) | Total ($) |
|---|---|---|---|---|---|
| W. Patrick Mulloy | $900,000 | $252,551 | | | $1,152,551 |
| Eric T. Bauer | $170,651 | $651,621 | | | $822,272 |
| Diana P. Diaz | $137,500 | $658,307 | | | $795,807 |
| Gregory C. Davis | | $297,483 | | | $297,483 |
| Dennis P. Halligan | | $322,661 | | | $322,661 |
| David P. Tusa | | $94,281 | $28,955 | | $123,236 |

36.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

37.     Thus, while the Proposed Transaction is not in the best interests of Sharps, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

38.     On July 25, 2022, the Sharps Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or

provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

39.     Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

a. Adequate information as to whether a committee of disinterested directors was appointed to lead the sales process and if so, the powers to which they were authorized in reference to any proposed transaction;

b. Adequate information as to why no market check was conducted for potentially interested third parties;

c. Whether the terms of any confidentiality agreements entered during the sales process between Sharps on the one hand, and any other third party (including Aurora), if any, on the other hand, differed from one another, and if so, in what way;

d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Aurora) throughout the sales process, if any, would fall away; and

e. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Sharps's Financial Projections*

40.     The Recommendation Statement fails to provide material information concerning financial projections for Sharps provided by Sharps management and relied upon by Raymond James in its analyses.  The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

41.     Notably, in connection with its fairness opinion rendered to the Company Board regarding the Proposed Transaction, Raymond James notes that it reviewed, "certain internal financial analyses and financial projections prepared by the management of Sharps relating to its business."

42.     The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Sharps management provided to the Board and Raymond James.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

43.     With regard to *Certain Management Forecasts* for Sharps prepared by Sharps management, the Recommendation Statement fails to disclose material line items for all projection metrics utilized in Raymond James analyses:

    a.  EBITDA, including all underlying inputs, metrics, and assumptions used to

calculate the metric, including specifically: net income, and interest and taxes;

b.  Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate the metric, including specifically: the specific inputs and assumptions used to determine the applicable assumed tax rate of 24.51%.

44.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

45.    Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Raymond James's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction.  As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Raymond James*

46.    In the Recommendation Statement, Raymond James describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

47.    With respect to the *Public Trading Multiples*, the Recommendation Statement fails to disclose the following:

a.  All metrics utilized for each compared company;

b.  The number of fully diluted outstanding shares for the Company;

c.  The inputs, metrics, and assumptions used to determine a 2022E EV/EBITDA multiple range of 6.3x—13.6x;

d.  The inputs, metrics, and assumptions used to determine a 2023E EV/EBITDA multiple range of 6.6x—11.8x;

e.  The inputs, metrics, and assumptions used to determine a 2022E EV/Revenue multiple range of 1.1x—2.3x; and

f.  The inputs, metrics, and assumptions used to determine a 2023E EV/Revenue multiple range of 1.0x—2.2x.

48.  With respect to the *Selected Transactions Analysis*, the Recommendation Statement fails to disclose the following:

a.  The specific metrics for each selected transaction utilized;

b.  The value of each transaction compared;

c.  The exact date on which each transaction closed;

d.  The inputs, metrics, and assumptions used to determine a EV/TTM EBITDA multiple reference range of (i) 11.9x—16.6x;

e.  The inputs, metrics, and assumptions used to determine a EV/NTM EBITDA multiple of 8.5x—13.0x;

f.  The inputs, metrics, and assumptions used to determine a EV/TTM Revenue multiple range of 2.2x—3.3x; and

g.  The inputs, metrics, and assumptions used to determine a EV/NTM Revenue multiple range of 2.0x—3.1x.

49.     With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

      a.   The range of terminal values calculated for the Company at the end of calendar year 2027;

      b.   The inputs, metrics, and assumptions used to determine terminal EBITDA multiples ranging from 8.0x to 12.0x;

      c.   The inputs, metrics, and assumptions used to determine a discount rate range of 9.0% to 13.0%;

      d.   The weighted average cost of capital for the Company;

      e.   The number of fully diluted outstanding shares of common stock for the Company;

50.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

51.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Sharps stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

## FIRST COUNT

## Violations of Section 14(e) of the Exchange Act

## (Against All Defendants)

52.     Plaintiff repeats all previous allegations as if set forth in full herein.

53.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

54.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

55.     The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

56.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

57.     The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

58.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender

its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

59.     Plaintiff has no adequate remedy at law.

### SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### <u>(Against all Individual Defendants)</u>

60.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

61.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

62.     Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

63.     SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

64.     Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

65.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

66.     Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

67.     Plaintiff repeats all previous allegations as if set forth in full herein.

68.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

69.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Recommendation Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

70.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Sharps's business, the information contained in its filings with the SEC, and its

public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

71.    The Individual Defendants acted as controlling persons of Sharps within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Sharps to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Sharps and all of its employees.  As alleged above, Sharps is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.        Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 4, 2022                    **BRODSKY & SMITH**

By:  */s/ Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*